1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VICKI D. GORGONE,                                          No. C 05-01087 SI

           Plaintiff,                          **ORDER RE: CROSS MOTIONS FOR**
                                                           **SUMMARY JUDGMENT**

  v.

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

           Defendant.
_____/

On June 30, 2006, the Court heard oral argument on the parties' cross motions for summary

judgment. After careful consideration of the parties' arguments and the record in this case, the Court

hereby GRANTS in part and DENIES in part defendant's motion and DENIES plaintiff's motion. As

set forth below, the Court concludes that defendant did not abuse its discretion when it denied plaintiff's

claim because her medical insurance plan excludes coverage for custodial care. However, the Court also

finds that plaintiff is not required to reimburse defendant for the first month of benefits paid because

such payment was made as an administrative exception and not pursuant to the contractual terms of the

insurance plan.

## BACKGROUND

**I.     The Plan**

Defendant Guardian Life Insurance Company of America ("Guardian") provides medical

insurance to plaintiff Vicki Gorgone ("Gorgone"). A.R. at G 097-183. The policy was issued under a

United States District Court

For the Northern District of California

plan established by her former employer, SuperGen, Inc., but Gorgone elected to continue coverage under COBRA after leaving SuperGen. The insurance plan also covers her daughter and dependent, Julia Gorgone. Gorgone Decl. ¶ 2.[1] Gorgone's Guardian insurance plan ("Plan") provides secondary medical coverage because the Gorgone family's primary medical insurer is Aetna. A.R. at G 191. The Plan only serves as coverage for medical expenses not paid for by Aetna but still covered by the terms of the Plan. A.R. at G 168.

The Plan's explanation of benefits begins with "Major Medical Highlights," which are identified as a "quick guide . . . [b]ut it's not a complete description of [the] Major Medical *plan*." A.R. at G 121.[2] The Plan instructs the insured to "read the following pages carefully for a complete explanation of what [Guardian will] pay, limit and exclude." A.R. at G 121.

The Major Medical Highlights outline the costs generally imposed on the insured. The yearly deductible for each covered person is $250. For charges not from a doctor or hospital, the insured contributes a co-payment of 20% until the yearly out-of-pocket cap of $1,250 is reached. At that time, Guardian covers all the remaining expenses with an unlimited payment limit for most sicknesses. A.R. at G 121.

Mental and nervous conditions are covered with special limitations and hence do not follow the benefits structure outlined in the Major Medical Highlights. The Plan states,

> We limit what we pay for the treatment of *mental and nervous conditions*, alcohol and drug abuse. We include a *sickness* under this provision if it manifests symptoms which are primarily mental or nervous, regardless of the underlying physical cause.

---

[1] Defendant objects to the declarations of Vicki Gorgone and her attorney, Kristin Jenny, on two primary grounds: (1) the declarations fall outside the record and hence are outside the scope of an ERISA action; and (2) the declarations violate Federal Rule of Evidence 701, which limits lay witnesses to testimony regarding their own rational perceptions. In an ERISA case, evidence outside the record may be considered when determining whether the standard of review is abuse of discretion or *de novo*. *See Kearney v. Standard Insurance Co.*, 175 F.3d 1084, 1090-91 (9th Cir. 1998). Defendant provides no support for its objection under Federal Rule of Evidence 701. This Court sees no reason to exclude plaintiff's declaration, for her testimony does not contradict the record and is not expert in nature. Accordingly, the Court OVERRULES defendant's objection to the Gorgone declaration. The Court SUSTAINS defendant's objection to the Jenny declaration because the Court DENIES plaintiff's request for attorney's fees and accordingly does not require analysis of the Jenny declaration regarding such fees.

[2] Emphasis is found in the original. Italicized terms are specifically defined in the glossary. Instructions located at the beginning of the glossary direct the insured to take note that all italicized terms in the Plan have a corresponding definition in the glossary.

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Inpatient coverage: You or a *covered dependent* may receive such treatment as an *inpatient* in a *hospital, residential treatment facility,* or in a *mental health* or *alcohol* or *drug abuse center.*

. . .

Lifetime payment limit: The benefits . . . are subject to a payment limit of $50,000 during the *covered person's* lifetime.

We don't pay for *custodial care*, education, or training.

A.R. at G 141-2.  The Plan provides covered benefits for the first thirty days of inpatient treatment for a mental condition and thereafter pays 50% of covered expenses.  A.R. at G 142.

The Plan defines the following relevant terms in the glossary:  A.R. at G 173.

**Residential Treatment Facility** means a facility which provides 24 hour treatment for people with drug abuse, alcohol abuse or mental health problems on an *inpatient* basis. . . . We'll recognize a *residential treatment facility* if it's accredited for its stated purpose by the *Joint Commission*,[3] and carries out its stated purpose in compliance with all relevant state and local laws.  A.R. at G 179.

**Custodial Care** means any service or supply, including room and board, which: (a) is furnished mainly to help a person meet his routine daily needs; and (b) can be furnished by someone who has no professional health care training or skills.  Even if you or a *covered dependent* are in a . . . recognized facility, we don't pay for care if it is mainly *custodial*.  A.R. at G 175.

**Covered Charges** are reasonable charges for the types of services and supplies described in the "Covered Charges" and "Charges Covered with Special Limitations" section of this plan's Major Medical Expense Insurance provisions . . . .  The services and supplies must be: (a) furnished or ordered by a recognized health care provider; (b) medically necessary to diagnose or treat a *sickness* or *injury*; (c) accepted by a professional medical society in the United States as beneficial for the control or cure of the *sickness* or *injury* being treated; and (d) furnished within the framework of generally accepted methods of medical management currently used in the United States. . . . Read the entire plan to find out what we limit or exclude. A.R. at G 174.

II.     **Enrollment at Sorenson Ranch School and Subsequent Denial of Claim**

In August 2002, Gorgone planned to enroll her daughter Julia in Sorenson Ranch School and

---

[3] The Guardian insurance plan's booklet defines Joint Commission as "the *Joint Commission* on the Accreditation of Health Care Facilities" in its glossary. A.R. at G 178. JCAHO is an acronym for Joint Commission on Accreditation of Healthcare Organizations.

3

1   Residential Treatment Center ("Sorenson") in Utah for treatment of Julia's mental condition.[4]  A.R. at

2   G 265.  On August 22, 2002, Gorgone called Guardian to clarify her benefits and to determine if Julia's

3   stay at Sorenson would be covered by the Plan and relatedly whether  pre-certification was necessary.

4   Following a disclaimer stating that the Plan's coverage is controlled by the actual terms of the Plan

5   rather than the oral explanation of those benefits,[5] Gorgone informed the Guardian representative of

6   Julia's diagnosis and of the fact Sorenson was a JCAHO approved in-patient residential facility.  The

7   Guardian representative informed Gorgone that pre-certification of a residential facility was not

8   necessary, and the representative reviewed the greatest monetary contribution for which Gorgone would

9   be responsible.   Because Gorgone had already met the $250 yearly deductible requirement for Julia,

10  the Guardian representative informed her that she would be responsible for 20% of the costs associated

11  with the residential treatment facility, with a cap on Gorgone's out-of-pocket fees at $1000.  The

12  representative informed Gorgone that once she had contributed her maximum out-of-pocket fees,

13  Guardian would cover the remaining costs with a lifetime maximum for mental health benefits set at

14  $50,000.  A.R. at G 265.  *See* Gorgone Decl., Ex. A at 1-3.

15       On August 23, 2002, Gorgone enrolled then fifteen-year-old Julia in Sorenson.[6]  A.R. at G 024.

16   Julia was enrolled until July 2003 when she returned home to California.  At Sorenson, Julia received

17  quarterly individual counseling, monthly psychotherapy, weekly group therapy, and daily milieu

18  therapy.  A.R. at G 018 & 022.

19       On September 3, 2002, Gorgone submitted the first Sorenson invoice to Guardian for

20  reimbursement.  A.R. at G 239.  Each month, Gorgone paid out-of-pocket for Julia's expenses at

21

22       [4] Julia was initially diagnosed as bipolar, but a subsequent diagnosis ruled out bipolar disorder
     and labeled Julia as suffering from borderline personality disorder.  A.R. at G 265.  In addition to
23   treatment for her mental condition, Gorgone also sought treatment  at Sorenson for Julia's academic
     underachievement, defiance to authority, drug use, and poor family relations. A.R. at G 020-24.

24       [5] Defendant's opposition contends that the aforementioned disclaimer is heard prior to speaking
25   with a Guardian representative over the phone.  However, there is no evidence in the record of the
     disclaimer.  Plaintiff's papers make no mention of the disclaimer, and plaintiff did not file a reply to
26   defendant's opposition.

27       [6] The Court notes that the record contains discrepancies regarding Julia's start date at Sorenson.
     Most of the documents identify August 23, 2002, as the start date.  However, a few documents,
28   including a letter from Sorenson, identify September 24, 2002, as the start date.  A.R. at G 012 & 018.
     In any event, this minor factual discrepancy is irrelevant to the Court's analysis.

United States District Court

For the Northern District of California

Sorenson and promptly submitted a copy of the invoice to Guardian.  Gorgone Decl. ¶ 8.  On December 6, 2002, Mental Health Case Management, an independent organization authorized by Guardian to review claims, determined that the services offered by Sorenson for Julia were not a covered benefit because the services were custodial in nature and did not correspond with the Plan's definition of inpatient or residential care.  A.R. at G 203-4.  On December 11, 2002, Guardian denied coverage of the expenses because Sorenson did not have the proper license and provided only custodial care.  A.R. at G 240.

On December 19, 2002, Andrea Fuller, a marriage and family therapist at Sorenson, sent a letter to Guardian stating that the facility is a licensed residential health care facility and detailing Julia's treatment.  A.R at G 240.  On January 8, 2003, Gorgone sent a complaint detailing the history of her Sorenson claims made to Guardian to the California Insurance Commissioner.  A.R. at G 217-19.

On January 23, 2003, Guardian responded to Gorgone's concerns regarding the denial of benefits.  Upon reviewing the audio recording of the August 22, 2002, phone call, Guardian agreed that Gorgone might have been misled because her benefits were not clearly explained to her.  In light of this finding, Guardian made an administrative decision to cover Julia's Sorenson expenses from August 23, 2002, through February 28, 2003, for a total of $22,186.19.[7]  Guardian emphasized that the payment of benefits was an exception, and that as of March 1, 2003, charges incurred at Sorenson would be denied based on the custodial care exclusion.  At that time, Guardian also provided Gorgone with the definition of residential treatment facility found in the Plan.  A.R. at G 220-21.

On February 7, 2003, Gorgone disputed Guardian's denial on the ground that Sorenson is a residential treatment facility and hence Guardian should provide coverage for the duration of Julia's treatment.  Additionally, Gorgone provided evidence of Sorenson's Utah license to provide residential treatment and Sorenson's JCAHO accreditation.  A.R. at G 224-25.  On February 19, 2003, Guardian reasserted that the denial of benefits was proper because the nature of the care provided by Sorenson was custodial and thus not covered by Guardian.  A.R. at G 228.

On May 20, 2003, an attorney representing Gorgone disputed the denial of her claim after

---

[7] Guardian's first payment of benefits on January 27, 2003, was for $15,813.64.  A.R. at G 220 & 221.  In total, Guardian has reimbursed $22,186.19 to Gorgone.  Gorgone Decl. ¶ 9.

United States District Court

For the Northern District of California

February 28, 2003.  A.R. at G 233-41.  Subsequently,  Guardian took Gorgone's denial under further review.   On June 17, 2003, Guardian requested from Sorenson Julia's medical records (including physician and treatment notes) and an itemization of all billed charges in order to substantiate medical necessity.  A.R. at G 016.

Upon receipt of the medical records in September 2003, an independent psychiatrist reviewed Julia's records.  On October 14, 2003, Dr. Kruszewski found that Sorenson was not treating Julia in conjunction with the requirements of a residential treatment facility.  His report stated that Julia was treated on an out-patient basis for behavioral issues, and that she received school-based programming at Sorenson.  A.R. at G 012-4.  Residential treatment coverage requires twenty-four hour in-patient treatment that does not primarily provide custodial care.  A.R at G 175 & 179.

Gorgone made monthly payments to Sorenson totaling $45,286.  Guardian has paid $22,186.19 to Gorgone for reimbursement of benefits.  Gorgone Decl. ¶¶ 8 & 9.  Gorgone now seeks the remaining total of unreimbursed expenses related to Julia's stay at Sorenson from March 1, 2003, to July 31, 2006, for a total of  $21,590.  Conversely, Guardian seeks repayment of thirty-days of benefits of an undisclosed amount received by Gorgone for the same treatment period paid by both Aetna and Guardian.[8]

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the

---

[8] After Guardian provided benefits for August 23, 2002, to February 28, 2003, Aetna, Gorgone's primary provider, provided benefits for Julia's expenses for the first 30 days of her stay at Sorenson (August 23 to September 23, 2002).   Guardian seeks reimbursement of its payments for August 23 through September 23, 2002, pursuant to a Plan provision stating that the primary provider pays benefits first and Guardian as the secondary provider pays the remaining covered benefits.  A.R. at G 169.

**United States District Court**

For the Northern District of California

nonmoving party. *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630-31 (9th Cir. 1987)  (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

The evidence the parties present must be admissible.  Fed. R. Civ. P. 56(e).  In an ERISA case in which the court must review the administrator's decision, the administrative record serves as the primary evidence to be evaluated.  Only if a *de novo* standard of review, rather than an abuse of discretion standard, is applied, may additional evidence be presented before the court.  Even so, broadening the scope of admissible evidence for review beyond the administrative record should only be permitted if necessary.  *See Kearney v. Standard Insurance Co.*, 175 F.3d 1084, 1090-1 (9th  Cir. 1998).

**DISCUSSION**

**I.    Standard of Review**

The threshold issue is whether this Court reviews the benefit denial for abuse of discretion or *de novo*.  The Supreme Court generally directs the application of the abuse of discretion standard where the benefit plan grants "the administrator or fiduciary discretionary authority to determine the eligibility benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The Plan grants Guardian discretionary authority as the Plan's fiduciary.  A.R. at G 182.

However, even where a plan grants the administrator discretionary authority, the Court will apply a *de novo* standard if the administrator has an actual serious conflict of interest.  In determining if a serious conflict of interest exists breaching the fiduciary's obligations, *Atwood v. Newmont Gold Company* outlines a burden-shifting process: the beneficiary must initially provide evidence illustrating a conflict of interest,  thus creating a rebuttable presumption from which the burden shifts to the fiduciary to produce evidence supporting that the conflict of interest did not actually affect the benefits denial decision.  *See Atwood*, 45 F.3d 1317, 1323 (9th Cir. 1995); *see also Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1145 (9th Cir. 2001), *vacated on other grounds*, 539 U.S. 901 (2003). Where the fiduciary serves as both the administrator and the funding source, an apparent conflict of interest is established which shifts the burden to the fiduciary.  *See Regula*, 266 F.3d at 1145.  If the

administrator fails to carry its burden and the Court determines a serious conflict exists, the Court must review the benefits decision *de novo*, rather than for abuse of discretion. *See Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999).

Here, Guardian has discretionary authority as the plan administrator and is the funding source, creating a presumption of conflict.  Plaintiff contends that an actual conflict exits because Guardian provided inconsistent explanations for her benefits denial.  The Court is not persuaded and concludes that there is no actual conflict of interest.  Contrary to plaintiff's assertions, defendant consistently denied coverage based upon the Plan's exclusion for custodial care.  The Explanation of Benefits provided two grounds for denial: a residential treatment facility must be (1) licensed and (2) acting within the scope of that license.  A.R. at G 087, 089, 091, 093, 095 & 250.  Upon verifying that Sorenson was licensed, Guardian's continued to deny benefits on the basis that Sorenson was not operating within the scope of its residential treatment facility license, and instead provided primarily custodial care.  Although the telephone call's benefits explanation was not the same as the subsequent denials, the Guardian representative simply made a mistake when interpreting Gorgone's benefits, and Guardian remedied that misinformation by providing uncovered benefits for six months.  Accordingly, the Court concludes that the proper standard of review is abuse of discretion.

## II.     Guardian Did Not Abuse Its Discretion

An ERISA administrator exercises an abuse of discretion when the decision is made without explanations, conflicts with the plain language of the plan's terms, or is based on a clearly erroneous finding of fact.  *See Atwood*, 45 F.3d at 1323-24.  If the fiduciary's decision is reasonable, the decision must not be disrupted.  *See Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1417 (9th Cir. 1991).  In applying this standard, the Court concludes that Guardian did not abuse its discretion when denying benefits for the final months of Julia's stay at Sorenson.[9]

Under the terms of the Plan, sicknesses that manifest mental or nervous symptoms, regardless of the cause, are subject to the special limited coverage provided for mental and nervous conditions.

---

[9] Although the Court applies an abuse of discretion standard, the Court would reach the same result under *de novo* review.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

A.R. at G 178. Julia's diagnosis and behavioral issues resulted in mental and nervous symptoms rather than physical symptoms, and thus the Plan's terms under mental and nervous conditions govern the benefit coverage of treatment of these issues. The Plan covers care in a 24-hour in-patient licensed residential treatment facility, and excludes primarily custodial care, education, or training. A.R. at G 142 & 179.

The Court finds that Guardian's benefit denial does not contradict the Plan's terms. In the Plan's operative clauses and glossary, custodial care is clearly designated as an uncovered expense. A.R. at G 142. The care Julia received at Sorenson was primarily custodial rather than in-patient. According to her medical records, her psychiatric sessions were conducted off-site monthly. A.R. at G G014. Julia's clinical record and a June 28, 2003, letter drafted by the marriage-and-family therapist at Sorenson confirm that a licensed therapist counseled Julia weekly, with unlicensed counselors providing supplemental treatment. A.R. at G 018 & 022. Julia's treatment team did not include a physician or registered nurse. A.R. at G 012. Dr. Kruszewski's independent review of Julia's medical records from Sorenson found that the medicine administration records were substandard, and lay personnel administered the medicine.[10] A.R. at G G012-14. Dr. Kruszewski identified Sorenson's services as school-based programming with outpatient treatment for behavioral issues. *Id.*

The Plan clearly limits coverage for mental and nervous conditions and expressly denies coverage for facilities providing custodial care. Sorenson provided custodial care of Julia because the therapy provided by licenced professionals was a secondary service. Sorenson's primary function was to provide school-based programming while caring for Julia in the absence of her parents. *Id.* Furthermore, an explanation which mirrors the Plan's terms accompanies each written benefits denial. A.R. at G 006-07, 086- 95, 203, 207, 209, 221, 227-29, 250 & 253. Guardian did not abuse its discretion because the denials do not contradict the Plan's terms and it consistently provided explanations detailing the rationale for the benefits denial.

---

[10] Guardian authorized an additional review of the claims by an outside independent Board-certified psychiatrist, Dr. Kruszewski. His report is uncontested.

United States District Court

For the Northern District of California

**III.    Gorgone Is Not Required to Reimburse Guardian**

Guardian seeks reimbursement from Gorgone for the payments covering the first month of Julia's treatment on the ground that Aetna, Gorgone's primary provider, also paid benefits covering this time period.  Guardian's Plan states that a beneficiary's "primary provider pays first.  The secondary plan then pays the remaining unpaid allowable expenses, but no plan pays more than it would have without this provision." A.R. at G 168.  Guardian seeks reimbursement of the "double payment" pursuant to this Plan's provision.

The Court concludes that because Guardian chose to provide benefits for Julia's first month of treatment as an administrative exception, rather than as a covered benefit of the Plan, the terms of the Plan do not govern.  Aetna's payment for the same time period does not trigger the primary provider clause of the Plan because, under Guardian's own reasoning, Guardian's original payment was outside the scope of the Plan's terms.  Accordingly, Gorgone is not liable to Guardian for repayment of the double benefits she received.

**CONCLUSION**

For the aforementioned reasons, the Court DENIES plaintiff's motion for summary judgement.  (Docket No. 35).  The Court GRANTS in part and DENIES in part defendant's motion for summary judgment.  (Docket No. 31).   The Court OVERRULES defendant's objection to the   Gorgone declaration and SUSTAINS defendant's objection to the Jenny declaration, (Docket No. 46), and DENIES defendant's request for judicial notice of unpublished cases.  (Docket No. 45).

**IT IS SO ORDERED.**

Dated: July 17, 2006

_____
SUSAN ILLSTON
United States District Judge